# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

February 11, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

MARY BOMAR,                               )
                                          )
       Petitioner/Appellee,         )
                                          )   Appeal No.
VS.                                       )   M1999-00951-COA-R3-CV
                                          )
TENNESSEE DEPARTMENT OF    )   Davidson Chancery
MENTAL HEALTH AND MENTAL )   No. 98-1525-I
RETARDATION,                      )
                                          )
       Respondent/Appellant.        )


APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, CHANCELLOR


RONALD A. RAYSON
111 S. Central Street
Knoxville, Tennessee 37901
      Attorney for Petitioner/Appellee

PAUL G. SUMMERS
Attorney General and Reporter

WILLIAM J. MARETT, JR.
Assistant Attorney General
425 Fifth Avenue North
Nashville, Tennessee 37243-0490
      Attorney for Respondent/Appellant


REVERSED AND REMANDED


BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.


# O P I N I O N


      This is an appeal by the Commissioner of the Department of Mental

Health and Mental Retardation from the judgment of the trial court which

reversed the dismissal of an employee of the Lakeshore Mental Health Institute. We find that the Agency decision was supported by substantial and material evidence. Therefore, we reverse the judgment of the trial court.

## I.

The appellee was a psychiatric technician employed by Lakeshore Mental Health Institute. On December 3, 1995, while working in the Children and Youth Program, the appellee observed Jonathan, a seven year old patient, running in and out of his bedroom and into the hallway. Although the appellee told Jonathan to stay in his area, he continued to slide around in the hallway. Appellee then told him to take a "time out." While taking his "time out" on the floor, Jonathan began "scooting around all over the floor." The appellee again asked him to keep quiet, but he ignored her request and continued to slide around on the floor. The appellee then approached Jonathan, placed him on his stomach on the floor, placed his hands behind his back, joined his hands at the small of his back, crossed his legs at the ankles and folded his legs back over his buttocks with his heels touching his buttocks. During this restraint, the appellee was leaning over Jonathan with her knee in the small of his back. The evidence indicates that Jonathan told the appellee he was having trouble breathing and that he was going to vomit. Such restraint continued until Mary Ogle, the RN supervisor, approached Jonathan and the appellee. The appellee then relaxed her hold and Jonathan returned to his room.

That same night, the appellee stated that "the Indians group would be a little bit better if we could keep Robert and Jonathan a little bit more under control" and "thank God I am not working tomorrow and I won't have to put up with this." The appellee admitted in her interview with an investigator for Lakeshore that other children were possibly within earshot when the former

statement was made. Appellee further admitted that the former statement was inappropriate and could be interpreted as an unjustified derogatory remark.

On December 20, 1995, after a discussion with the program director at Lakeshore regarding the events of December 3, 1995, the appellee received a letter of recommendation for termination. As grounds for the dismissal, the letter cited Lakeshore Mental Health Institute Policy No. 2.44 Patient Abuse, 0940-2-3-.03 Resident or Patient Abuse by Employees which states in relevant part:

> Employees shall not:
>
> (a) Knowingly threaten to touch, attempt to touch or actually touch a resident or patient in any manner which a reasonable person would recognize as likely to be harmful or painful or to cause mental anguish, or
>
> . . .
>
> (c) Knowingly engage in any conduct toward a resident or patient which a reasonable person would recognize as brutal or cruel under the circumstances .
>
> . . .
>
> If an employee engages in conduct prohibited by this rule, the employee is guilty of conduct against the good of the service and the employee shall be dismissed. Such a violation is most likely to be determined to be gross misconduct.

As a result of the recommendation, the appellee's employment with Lakeshore Mental Health Institute was terminated. Such termination was upheld in an initial order of an administrative law judge and by the Civil Service Commission. The appellee appealed to the Davidson County Chancery Court under Tenn. Code Ann. § 4-5-322. The Chancellor reversed the Commissioner's holding that the decision did not support a finding that the appellee used excessive force or made derogatory statements in violation of Lakeshore policy. The Commissioner of the Department of Mental Health and Mental Retardation now appeals to this Court.

## II.

Tenn. Code Ann. § 4-5-322(h) states that upon judicial review of an agency's findings

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
>
> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

"Substantial and material evidence" has been defined as "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Clay County Manor, Inc. v. State of Tennessee*, 849 S.W.2d 755, 759 (Tenn. 1993) (*quoting Southern Railway Co. v. State Board of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984)).

The review of the trial court's decision by this Court is essentially a determination of whether or not the trial court properly applied the foregoing standard of review. *James R. Bryant v. Tennessee State Board of Accountancy*, No. 01A01-9303-CH-00088, Davidson County (Tenn. Ct. App. filed September 1, 1993 at Nashville) (*citing Metropolitan Gov't. of Nashville v. Shacklett*, 554 S.W.2d 601, 604 (Tenn. 1977)).

-4-

The appellant first contends that the trial court erred in finding that there was no substantial and material evidence to support a finding of patient abuse by the appellee in the use of the restraint hold. The Civil Service Commission adopted the findings of the initial order of the administrative law judge which found that the preponderance of the evidence demonstrated that the appellee restrained a patient in an abusive manner and termination was an appropriate discipline for such conduct.

The evidence established that the appellee restrained a seven year old patient after he refused to follow her instructions and continued to make noise and slide around in the hallway. The appellee's restraint of the child consisted of placing him on his stomach on the floor, placing his hands behind his back, joining the hands at the small of the back, crossing the legs at the ankles, folding the legs back over the buttocks with heels touching the buttocks, and transferring some of her weight onto the child. The child complained that he could not breathe, that he was going to vomit, and that appellee was hurting him. The child was also screaming and crying. The restraint lasted from two or three minutes to fifteen minutes. In light of the foregoing, we find that there was substantial and material evidence from which the Commission could find that the appellee knowingly touched a patient in a manner which a reasonable person would recognize as likely to be harmful or painful. We note that there are exceptions to this rule set out in the Lakeshore policy at 2.44, 0940-2-3-.02 Justified Employee Conduct. However, there is no substantial and material evidence in the record to support a finding that the appellee's conduct was reasonably necessary to protect the patient or employee from harm or that the conduct was authorized by the patient's treatment plan. Therefore, the exceptions are inapplicable to this case.

The appellee contends that her actions did not constitute patient abuse as set out in Lakeshore policy because she did not act knowingly.

-5-

Furthermore, the appellee contends that she did not restrain the patient in a manner that a reasonable person would recognize as likely to be harmful or painful. In support of these arguments, the appellee points to testimony that indicated that this same type of restraint was used by other personnel on the same patient and other patients and that she did not receive training with regard to specific restraints for child patients. However, we find that the mere fact that appellee may have witnessed this hold being used by other employees does not mean that she did not act knowingly with regard to her own actions and the likeliness that those actions could cause pain or harm.

In addition, although the appellee did not receive training specifically dealing with the restraint of children, the record establishes that the appellee did receive training regarding restraint holds in general. The restraint the appellee used on Jonathan was not a restraint taught during this training. We decline to hold that these facts would support a finding that the appellee could not act knowingly or that these facts would lead a reasonable person to believe that the restraint used by the appellee on Jonathan was not likely to be harmful or painful. The appellee contends that she restrained the child to keep him from harming himself. The evidence established that the child was sliding around on the floor. There is no evidence that the child was in danger of harming himself. Therefore, the trial court erred in reversing the Commission's decision on this issue.

## III.

The appellant next contends that the trial court erred in not finding substantial and material evidence to support a finding of patient mistreatment by way of the appellee's use of derogatory language. As set out earlier, the

evidence established that the appellee stated to at least one other staff member that "the Indians group would be a little bit better if we could keep Robert and Jonathan a little bit more under control" and "thank God I am not working tomorrow and I won't have to put up with this." In her signed statement to the Lakeshore investigator, the appellee admitted that the former remark was inappropriate and could be interpreted as an unjustified derogatory comment. The appellee further admitted that this statement possibly was made within the earshot of other children.

Lakeshore Mental Health Institute Policy and Procedure 2.44, 0940-2-3-.04 Other Kinds of Mistreatment of Residents or Patients by Employees states that

> Employees shall not:
>
> . . .
>
> (f) Make unjustified derogatory comments about a resident or patient to or in the presence of the resident or patient or another person . . .
>
> If an employee engages in conduct prohibited by this rule, the employee is guilty of conduct against the good of the service and the employee is subject to discipline, including suspension or dismissal. Mistreatment of a resident or patient may also be determined to be gross misconduct.

The rule does not require, as the trial court suggests, that a patient actually hear such comments. The rule only requires that the statements be made in the presence of a patient or another person. There was substantial and material evidence presented that the appellee made these remarks about the two patients in the presence of at least one staff member and possibly within earshot of other patients. Therefore, the trial court erred in reversing the agency's decision that the appellee had violated this rule.

**IV.**

The last issue in this appeal is whether termination of the appellee's employment was an appropriate form of discipline for the violations that occurred. The agency found that the appellee had engaged in gross misconduct or conduct unbecoming a state officer and that her termination was justified.

We note that the Lakeshore Mental Health Institute Policy and Procedure states that if an employee commits patient abuse as defined by 2.44, 0940-2-3-.03, "the employee is guilty of conduct against the good of the service and the employee shall be dismissed." As there was substantial and material evidence to support a finding that the appellee committed patient abuse, the agency had the authority to terminate appellee's employment on such basis.

The Lakeshore policy further states that if an employee is found guilty of patient mistreatment as set out in 2.44, 0940-2-3-.04, that employee is "subject to discipline, including suspension or dismissal." Therefore, the agency had the authority to terminate the appellee upon a finding of patient mistreatment. Whether the derogatory remarks alone would have resulted in the appellee's dismissal is a matter we do not have to decide, since she was also found guilty of the more serious charge of patient abuse.

The judgment of the trial court is reversed, and the action of the Agency is affirmed. Remand this case to the Chancery Court for Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellee, Mary Bomar.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

_____
CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE